Morning. May it please the Court. Phil Vons on behalf of the appellant, Frederick Johnson. Your Honor, the briefs that are submitted in this matter, I think, adequately frame the issues. And I'd like to refer my remarks primarily to things that aren't in the briefs and reserve most of my time for rebuttal. Having said that, the Court's aware that the trial court here engaged in a fairly extensive in limine motion analysis of what's prejudicial and what's more probative. It came up with the conclusion that certain areas of surveillance were more probative than prejudicial and certain areas were not. That analysis should have continued throughout the trial. Our brief indicates that we believe that none of the surveillance should have been admitted. But having already been admitted, we don't believe that the door, so to speak, was opened by counsel's questions. The counsel asked questions about areas of surveillance that were already ruled admissible. What's wrong with what was admitted? Well, the day that was admitted over defense attorney's objection was May 25th. On that date, there were banks that were surveilled that were not the bank that was not the bank, rather, that was the area where the defendant was arrested on the day of the arrest. What's more important, I think, is that there were eight other banks that were surveilled that the defendant was casing on those days, on that day, the 25th, taking our case farther away from what it began, which is a felon in possession, to an armed bank robbery in the making sort of a case. So our distinction in our brief is that we don't believe that that evidence should have come in at all. But I think the sub-issue is that the door wasn't even open for that. Secondly, the court here is probably going to say, well, you know, how are we in a better position to analyze what is prejudicial versus the trial court? I would agree with that argument. But I think the trial court's analysis went the right direction. It just discontinued at a certain point. It should have continued to the point when this question was asked by the defense attorney, do you think he was casing a bank? Fine. The issue of casing banks was already out there. The question that was asked by the defense attorney, I don't think, opened the door to a separate day of surveillance that was not already in the record to eight other banks that were not already discussed. So we don't think that the area should have been delved into to begin with, first of all. We also don't think that the question itself, which was tailored strictly to the dates that were already admitted, opened any doors. Lastly, on the issue of ineffective assistance to counsel, we have argued that this application that the defense attorney had to be employed by the U.S. Attorney's Office was an issue that could have raised a potential conflict. We don't believe that by itself it raises a conflict. We do believe that the context in which it was raised, i.e., on the eve of closing argument as opposed to months before the trial, raises a question that the court has to analyze, well, was counsel's performance affected by that? If counsel had a conflict-free presentation to his client, that should have been addressed initially. Apparently Mr. Knox submitted his application either in May or June of 2007. His representation to Mr. Johnson occurred the latter part of June, so it's not something he could have forgotten about. It's something that should have been addressed with the counsel, with his client, early. The cases that we cited, Garcia v. Bunnell, and also the case within, which is U.S. v. Unruh, both involve cases where this issue was raised before the trial commenced, and the defendant, rather, in each case was given an opportunity to weigh the these issues, consider it over days, apparently in the case of Garcia, and then be asked whether he would choose to waive that conflict or not. In our case, obviously the defendant had no chance to do that because the only issue that was raised was raised after the trial had begun and actually almost concluded at that point. So we submitted with that, with those remarks, Your Honor, and reserve the rest of our time for rebuttal, assuming the Court does not have any questions. Thank you, counsel. Thank you, Your Honor. Good morning, Your Honor. Drew Caputo for the United States, and may it please the Court. The district court properly exercised its discretion to admit the surveillance evidence at issue in this appeal. That surveillance evidence was necessary in order to show that surveillance evidence was inextricably intertwined with other evidence admitted in the case, and it was necessary to show the context in which the defendant could have come to possess a firearm in Sunnyvale, California, on the date charged in the indictment. And the alternative, that surveillance evidence was admissible under Federal Rule of Evidence 404b, among other reasons, to show motive, because the surveillance evidence tended to show preparations by the defendant to rob a bank, and the jury could conclude that those were the weapons used to rob the bank. And the evidence that was found in the case was a possession of the firearm that was charged in the indictment. Well, the issue in it was a possession of the firearm found in the, what was it, the floorboard underneath where the defendant was sitting? In a bag contained at the defendant's feet in the vehicle. It had a mask or something like that in there. Correct. There was also a costume mask and several other items that useful for robbing a bank. Wasn't the evidence that was seized at the defendant's residence enough to show possession because it wasn't there a mask there? There was a twin of the mask that was found in the bag in the vehicle found in the defendant's apartment, along with a receipt for the purchase of two masks. All of that evidence also went to the possession issue. So as to the surveillance evidence, which was, again, admitted for purposes of showing a motive for possession, under either the inextricably intertwined theory or Rule 404B, this Court should uphold the district court's exercise of its discretion to admit that surveillance. Well, you know, in the cross-examination, was it shown that he was, in fact, visiting a vacuum store? That was one of the lines of cross-examination by a defendant's counsel. Right. And the district court took that line of questioning to be a suggestion that the FBI had surveilled the defendant visiting a series of innocuous locations in the days leading up to the arrest. And that was a misleading impression because Why is that so misleading? I mean, you've got him on the day in question, plus one other day at least, that is already being looked at, and that's been ruled admissible, that they can see whether he is or isn't casing the banks. So all they show is that he also has some innocent behavior that day. I'm not quite sure why that somehow opens the door to what is pretty prejudicial to show that he spent the day before running around casing eight banks, when he's not even being charged with bank casing. Yeah. I think there were at least three lines of questioning in defendant's counsel's cross-examination of Agent Gurney that opened the door by creating this misleading impression that there were a series of innocuous movements by the defendant in the days leading up to his arrest. The first was this line of questioning about the defendant visiting a vacuum cleaner store. The clear import of that was that the defendant was visiting innocuous locations. The second line of questioning was a series of questions about whether when the defendant was actually arrested, he actually had a gun or other bank robbery implements on him, again, a suggestion challenging the notion that the defendant was preparing to rob a bank. And then the third line of questioning was the defendant's counsel asked what the defendant was initially arrested for when the FBI arrested him on May 30th, and the answer to that question was attempted bank robbery. The clear suggestion of that line of questioning was that the defendant wasn't up to anything untoward during the period when the FBI was looking at him. And as defense counsel knew and as the Court knew, there were a series of visits by the defendant to banks leading up to the date of his arrest, which tended to strengthen the impression that the defendant was preparing to rob a bank, which was, again ---- That wasn't illegal, was it? You can visit banks. Correct. Right. But that fact is probative of what the defendant could have been up to on May 30th, the government's position being that what the defendant was up to on May 30th was preparing to rob a bank, which in fact gave him a motive to possess the weapon. Was it the same bank or a different one? He visited a series of different banks on May 25th. Then he visited the same bank on May 26th, which was the Saturday of Memorial Day weekend. The next business day was Tuesday. On May 29th, he visited the same bank in Sunnyvale. That's the Wells Fargo. In Sunnyvale. The two days that were originally admissible. That's correct, Your Honor. And then the date with the opening of the door was May 25th. So under either the inextricably intertwined theory or under Rule 404B, this Court should uphold the district court's ruling to admit the surveillance evidence because it was not an abuse of discretion. On Defendant's Sixth Amendment claim, that claim should fail on the merits under both prongs of the Strickland test. First, the defendant can't rebut the strong presumption of reasonable performance that's established by Strickland. Defendant's counsel here made a reasonable tactical decision to question the government's theory that the defendant was preparing to rob a bank, and it was effectively impossible for him to do so without addressing the surveillance evidence on cross-examination and attempting to poke holes in it through his cross-examination of the agent witnesses. Because that strategy was reasonable, the defense can't show that the trial counsel's performance fell above the objective standard of reasonableness under the first prong of the Strickland test. In addition, the defendant can't show prejudice on the facts of this case because there was no reasonable probability of a different jury verdict if the May 25th surveillance evidence had never been admitted. That's because there was overwhelming evidence of the defendant's guilt that was presented to the jury separate and apart from that limited May 25th surveillance evidence. And that additional evidence included, as Judge Tyler has mentioned, a gun found in the bag at the defendant's feet when he was arrested, a mask in the same bag, and the FBI's later discovery in the defendant's apartment of the twin of that mask along with a receipt for the purchase of two masks. He didn't testify, did he? The defendant did not testify at trial. The FBI also found a list of bank addresses in the defendant's apartment later that day. The defendant made a series of inculpatory statements the following morning as he was being taken to court for his initial appearance. And there was surveillance admitted from May 26th, May 29th, and May 30th, none of which had anything to do with the defendant's counsel's questions on cross-examination. So taking all that evidence together, the defendant can't show prejudice on the facts of this case. And for that reason, his Sixth Amendment claim should be rejected on the merits. And for all these reasons, we would ask the Court to affirm the district court's judgment in all respects. Thank you. Thank you, counsel. May it please the Court. Once again, I will try to be very, very brief. Mr. Caputo mentioned that the question from defense counsel on cross-examination about surveillance tried to put out an innocuous reason for the defendant's being in the vicinity of the banks. I would submit to the Court that absent refraining from asking any questions, that's pretty much the only thing he could have asked. I mean, at that point, there was already an expert opinion by that same agent about what the agent thought the defendant was doing, i.e., casing a bank. So, Mr. Knox, the defense attorney had no real other options other than to question the basis of that opinion. So I don't think it's that the innocuous purpose that was raised by the defense attorney opened any doors, because it was already this opinion, expert opinion, that the casing was actually occurring. And his cross-examination was attacking the basis of that opinion. Relative to the Sixth Amendment claim, I would agree with Mr. Caputo that it was a very strong case for the government. In fact, the trial court, I think, said something to the effect of we didn't want to pile on what was already there. But that does not mean that just because it's a strong case, you can just throw everything else in there and just figure, hey, the guy's going to get convicted anyway. I mean, I think that's probably the most appropriate time to engage in a very careful balancing test when there is what appears to be a fairly large amount of prejudicial evidence. That's the time when the Court should be most protective of the defendant's rights. So we submit it, Your Honor. Thank you. Thank you, counsel. Thank you both. The case that's argued will be submitted.
judges: Reinhardt, Siler (6th Cir.), McKeown, Cjj